Oral argument not to exceed 15 minutes per side. Mr. Keech for the appellant. Morning. Morning, your honor. You may proceed. Thank you. May it please the court. My name's Tynisa Williams, Sean Beeler, and the class of individuals they proposed to represent before this court. Would you like to reserve any time for rebuttal? Yes, sir. I did that with the clerk's office. I'll reserve three minutes. All right. May I proceed? Yes, please. I would respectfully suggest that the central question that this court has to address in the face of the procedures employed by the City of Cleveland, which are twofold, first involving the physical delousing of pretrial detainees using an exterminator can to spray solution onto their heads and genitals. And then second, the group strip searches that are addressed in the individual claimant's claims, meaning Tynisa Williams, who was strip searched and released in the company of two other detainees, and Sean Beeler, who on one occasion was strip searched and deloused by another inmate. Reconciling those practices against the standard of human dignity that this court has already enunciated in the Stoudemire decision. The court in Stoudemire made clear that even after the Florence decision, that does not equal abdication. That Florence does not equal open season on the privacy rights of detainees. The Stoudemire decision addressed a situation very similar to that presented by Tynisa Williams before this court. The Stoudemire decision addressed a person in an open window where people could see in. And the court, looking at that, using the balancing test of Bell v. Wilfish, which was in turn interpreted in Florence, and in turn addressing the Turner factors, made very clear that the manner in which people are treated matters. It's not just the practice that's looked at to determine whether or not the manner in which people are treated. And if an inmate's privacy rights can be respected as part of the manner in which corrections officials or jail officials have to address their legitimate penological interests, that those privacy rights should be respected. Mr. Keech, the case was stayed pending Florence, and then after Florence these matters came up. Has there been any post-Florence discovery in this case? There has not. Is any needed in your view? Yes. What would you do if we allowed you to have discovery at this point? Well, the first thing I would do is confirm, well it was partially confirmed in the discovery that preceded the stay, that these searches were being done in groups and likely continue to be done in groups. I would want to shore that up. Do they admit that? Their 30B6 deponent has admitted that, yes. How big are these groups then? Three people. Okay, so they have three naked people together? Yes, sir. And they do all the stuff? Yes, sir. Do they have a reason why they need three people? No. As opposed to one? That was, to my knowledge, has not been the subject of any briefing put forward by the City of Cleveland. That's kind of the balancing test of their interest of doing it the way they do it, as opposed to the privacy interest, right? We just don't know? Yes, I agree. That also wasn't addressed in Judge Pearson's decision. Right, she just said it was under control by Florence. Yes, she didn't address that question. She didn't address having a detainee be deloused by another detainee and what the privacy interests are associated with that, so we'd like to look into that. How does that come about? I mean, how does one inmate have authority to start spraying stuff on another? I mean, that seemed rather bizarre to me. Is that common that they, okay, part of your input procedure is you're going to be doing other things to other detainees? From what I know, that was a practice in the facility where those practices, you know, the strip search and delousing would be done by inmates who were called trustees. Does the other inmate do a strip search of another inmate? That is my, yes, that is my understanding. I'm not sure how clear that is in the complaint that I put in, but it is my understanding. There's certainly addressed in the complaint for Mr. Beeler that he was required to disrobe in front of another detainee who was a trustee and that as part of being disrobed had to be sprayed down with the delousing solution, so I would think that qualifies as a strip search, but it's not, I don't know if he, sorry sir. Yes, this was done by the other inmate. That also was not addressed in Judge Pearson's decision and we did not have an opportunity to take discovery into that point, but last but not least what I'd like to take discovery on most importantly is the need for and the efficiency of this delousing regimen and the possibility of allowing for other alternatives. Did they have delousing in the Florence case? They did, but it was different than the delousing the city of Cleveland used. The delousing in the Florence case, and this is part of the submission to the district court and in my rebuttal I will direct the court to the deposition transcript that discusses it, they used a cup and so basically what happened is they come in, they take off all their clothes, they get strip searched and then the corrections officer would say to the detainee at the Burlington County Jail, all right, here's some delousing solution, take a shower, apply this to yourself. Versus having an exterminator can of delousing solution sprayed in your face, in your hair, on your genitals, in your pubic hair and in the case of Ms. Williams in her anus. Okay, but you kind of, you want a discovery as to the effectiveness of this particular type of delousing, is that it? Well, there's more than that, your honor, but it's relative to the effectiveness. I would agree that under Turner, being able to satisfy legitimate penological interest is a low bar, but under, I believe it's Spies versus Vonovich from this court, if we can show that this procedure has no effectiveness at all as it goes to preventing lice. See, I don't know if really that's determinative because as a parent who has had kids that have had lice from kids in school, I know you've got to do more than one treatment to get it off. Right. Just having, giving the delicing to have the person do a shampoo is not going to do it, so that wasn't even effective in Florence. It's probably not effective here as well, but the Supreme Court in Florence didn't seem, the effectiveness didn't seem to be an issue. The fact that this cup of shampoo of delicing is really not going to do anything with the lice, but they allowed it in Florence, so I don't know if effectiveness really is an issue here, that's all. Well, certainly I would agree effectiveness is the lesser issue, certainly the manner in which it is done. The manner is. I mean, this is much more intrusive, much more humiliating, much more demeaning to be sprayed as opposed to go in the shower and you take care of this thing. I mean, this is, this is really outrageous, I think. Well, Your Honor, I certainly agree, but unfortunately Judge Pearson did not see it that way. This is, this is one of the most offensive booking procedures that I think has ever been. I totally agree with you. Yesterday we had a case, the person was taken down to the local jail on a case of mistaken identity. The person had nothing to do with it. And to think, well, these are only criminals that go through these proceedings. This woman was a total bystander who happened to have the same name. And, you know, it really, it kind of offends my conscience. Well, I think that is indicative of why this appeal is so important. Because if the court affirms what Judge Pearson did below, you're not just going to see this practice in Cleveland, Ohio. Although, in fairness to Cleveland, they did stop it when they got sued. Well, the licensing, they stopped, right? Yes. The group strip searching, as far as we know, is still going on? As far as I know, that is still going on. And the only justification I can see for it is going to be just convenience. It's quicker to strip search. You know, I don't know what my colleagues are coming from on this, but I think that the case probably comes down to a balancing of the legitimate penal interests of the city of Cleveland to do these things. And it's hard for me to see what they would be, as opposed to the privacy interests of the pretrial detainees. But that's kind of a factual thing, of weighing the facts here in favor of the Cleveland, the facts of the detainees. And we just don't have the record for it, I think, at this point. We also don't have a ruling by the district judge on that. We just have the district judge, I think, making the erroneous finding that this is controlled by Florence, which I don't think it is. So, I mean, at this point, I would be inclined to remand it for further proceedings, further discovery, and then allow the defendant to bring a motion for summary judgment down the road by claiming that the penal interests outweigh the privacy interests and have it come back to us. Would you be happy with that result? That's what I'm hoping for, yes. That's what you're actually requesting. Yeah, I don't see how I can get a reversal at this point. I mean, I can't see how we can rule as a matter of law that this is unconstitutional right now without weighing the factors, that's all. I think, ultimately, you want a ruling that this is an unconstitutional violation of the Fourth Amendment. Yes. But I don't think we're in the position to rule that way at the moment without knowing that they really do have an interest. I mean, would you agree with that? Yes. I would agree that, first off, some of these issues may have to be subject to a jury trial. In fact, I know that Turner factors are often subjected to jury trials and let juries make a determination about reasonableness with appropriate jury instructions. But also, that is one of the problems here, is that it appears that Judge Pearson did the opposite of what the Supreme Court ruled should occur in Tolan v. Cotton, which is she accepted everything that the defendants put forward in the absence of any factual submission and factual proof and said, well, deference to correctional officials, I believe you. Florence applies. And these obscene and unnecessary practices go forward. I have just a few moments, and I would just like to reiterate that, although we've already discussed this, in addition to the delousing issues, there is the situation of the individual plaintiffs in this case that were ignored by Judge Pearson and that I would also respectfully suggest to the Court are unconstitutional. You're asking for a declaratory judgment once you get the facts set up. That is one of the remedies that we seek, yes. Maybe damages, but you might run up against a qualified immunity issue. There's no qualified immunity here, sir. It's a municipal policy claim. No individual defendants were sued. So either the policies and practices... You're not charging individuals at all? I'm sorry, sir? You're not charging any individuals at all? No, sir. A municipality is not entitled to qualified immunity, is that right? Yes, sir. Because it's a practice custom, it's a Monell... It's a policy and practice claim. This is the official policy of the city of Cleveland. It's in their written policies. So they're liable under Monell under 1983 for that if it's a constitutional violation? Yes, sir. Where are you in the process of getting the class certified? Your Honor, I've exceeded my time. May I continue? Of course. You can always continue when you're invited to do so by the Court. Thank you. We never had an opportunity to address class certification to my recollection. I think we were heading toward the class certification deadline and then the certiorari was granted in Florence and the case was stayed. So we never had an opportunity to address class certification that I can remember. I may be confusing this with another case. I know there was one case where we had a motion pending and then Florence came down, but I don't believe this one was it. All right. Thank you. Thank you, Your Honor. Thank you. You may proceed, Counsel. Thank you. Good morning, Your Honors, and may it please the Court. My name is Alejandro V. Cortez, and I'm an Assistant Director of Law for the City of Cleveland. I'm here today on behalf of the appellee, the City of Cleveland. I think as an initial starting point, I think it's important to remember that we're here on the amended complaint is a facial constitutional challenge to the city's delossing policy. And in that regard, I think the question that's before the Court is whether the Fourth Amendment permits the Cleveland House of Correction to require all detainees to undergo, as part of a jail intake procedure, a delossing protocol before they are admitted into the general jail population. And I do think that Florence provides guidance to answer this question. Florence reaffirmed principles that were first announced in Bell v. Wofish and Turner v. Safley that prison regulations should be upheld if they are reasonably related to penological interest. And specific to the Florence case, they dealt with jail intake procedures that were closed visual inspections of an inmate's body cavities. And in that regard, it was a strip search and also a delossing protocol. And in that case, I think it's important to point out that the Court noted that there are real dangers in the introduction of lice into a custodial facility. And that it was not surprising to them that detention facilities such as the House of Correction would devise thorough search intake procedures to prevent disease, weapons, and other contraband from entering into the facility. So there is substantial interest in detention facilities to maintain a healthy and sanitary facility. And so the logical conclusion, in my opinion, is that a delossing protocol, such as the one used by the city of Cleveland, would not be facially unconstitutional. Was the Florence different in that they had individualized delossing in that case? Yes, the procedures are different. And there are two district court cases that address the manner in which the delossing solution was applied. The first case was Liguori v. The County of Susquehanna, which is a Middle District of Pennsylvania case decided in 2011. Do you have to file that authority? No, absolutely not, Your Honors. But I believe that it is instructive here in that the issue was addressed by a court and that they found that the application of the delossing solution either by a host method or individualized was a de minimis difference that did not materially alter. If I don't think that case is persuasive, I'm going to throw it away. Tell me why that's a good decision. Just don't cite it as the law because it's not binding on us. I believe that it's a good decision because we have already gone through, just in that case and in the situation presented here, the detainee has already undergone a strip search. In Liguori and in Cantley and in this case, you have individuals who are required to manipulate their genitals, squat, cough, lift their arms, and expose other parts of their body for close visual inspection. And I think as the Supreme Court noted in Florence, that is always going to be a humiliating and offensive situation. A little more humiliations doesn't matter. Is that the argument? I believe that... They've already been humiliated, might as well pile it on. The procedure happens. You have the strip search and then you're sprayed with a delossing solution. The increase in the presence before the individuals is very de minimis, no more than a few seconds. It sounds to me very intrusive, to me. Particularly if you have another inmate doing the delossing and spraying your private parts. Well, the individuals, I think as Mr. Keech mentioned in his argument in the briefing, these individuals are considered trustees. They're a select group of individuals who... They're trained. I'm not going to go that far and say that they're trained since I do not believe that's in the record. But these individuals have been chosen to help in the process of supplying the delossing solution. May they be sex offenders? Do they segregate out which guys? These are all pre-detainees, I guess. Do they look at what they're charged with before they let them assault a fellow inmate? Again, I cannot answer that question today. Maybe they should? Isn't this really outrageous? I believe it's a policy that... If you were falsely accused and taken to the Cleveland jail, would you be outraged by this kind of procedure if they used it against you? I think any individual would be outraged at this type of problem. Okay, why should we allow it to proceed then? Because as Florence articulated, there is a legitimate penological interest in preventing the introduction of lice into a facility. Now, I understand that Florence wasn't directly addressing delossing and didn't address the manner in which delossing was performed. But I think if you analyze the procedure here under Turner, it would still pass constitutional muster. I think the question, when you're looking at it under Turner, is that did the decision-maker have a... Was there more of a non-negligible risk that a harm could occur if we didn't take these steps to prevent lice from happening? I think that is a very low bar that's been established here by our procedure. The procedure was in place to prevent the introduction of lice. The manner in which we supply or provide the solution, again, I believe is a diminutive difference between having the individual apply it themselves or having it sprayed on. I think there were relevant considerations to take into account when you would allow someone to apply the solution themselves. For example, they may not apply it at all, they may apply it incorrectly, or they may potentially use it as a weapon. So by having an individual spray it on, you're taking out those potential factors. Okay, but that's kind of a factual issue, is it not? Would not further discovery be helpful if that is your reason why this is a necessary manner of doing it in the jail? Wouldn't further discovery be helpful to us rather than to speculate? You may be correct as to that, but I just don't know because I don't have a record on that, do I? I think it goes back to my first point that this is a facial constitutional challenge. They're saying that the policy that we employ is not constitutional in any respect. I think that's been rejected by Florence. Florence upheld a strip search procedure that involved the lousing. What they're really asking for is an as-applied challenge to the way that we apply the lousing solution. And they had the opportunity to amend their complaint one time before by grant of the district court, yet they chose to, again, focus on the manner of the way that the lousing solution was applied and, again, argue that the manner implicated facial unconstitutionality. So I think that was addressed in the city's briefs that, you know, while the district court also said that the amendments would be futile, I think there was an element of discretion as well. Toward the end of her opinion, she noted that she had already given them one opportunity to comport their decision to Florence, and they failed to do so. So I understand the concerns with how the manner is applied, but I don't believe that's actually an issue that's properly before the court. And I know players also have mentioned the group strip searching as an issue that they want to address. I believe that the case of Powell v. Barrett would be dispositive of that issue because in that case, you had 30 to 40 individuals who were group strip searched and deloused. Powell is dispositive? Is that the Fifth Circuit case? That is the Eleventh Circuit case. Is that dispositive on us? Again, it's not binding, but I do believe that it is. How is it dispositive if it's not binding? I believe it. I may have misspoken. So it's persuasive authority that I believe. We don't have to file the Fifth Circuit here. No, you do not. But I believe that. We often don't. I believe that the fact that it has been addressed by another court and the court found that. It hasn't been addressed by us, has it? No, it has not. But I would have mentioned that in the case of T.S. v. Doe, which was decided by this circuit, the court, while the issue for that panel was strip searches and delousing in the context of juvenile detainees and qualified immunity, the court nonetheless mentioned that if this was adult detainees, Florence would have been dispositive and there wouldn't be a constitutional challenge. I think that's important just, again, that we're here on a facial constitutional challenge, and this circuit has even found that the delousing component to a jail strip search and delousing policy is constitutional. Just another aspect on the group strip searches. I think it's in the record that we admit up to about 12,000 inmates a year, and there are only about 8,750 hours in any given year, in any year or so. We are dealing with a considerable amount of individuals, and that is a factor to take into account under Turner what the accommodation would have on the operations of the detention facility. Those are factual issues, are they not? That more appropriate should be resolved by summary judgment as opposed to a motion to dismiss? Motion to dismiss, all we're trying to do is determine whether a cause of action is plausibly alleged, viewing the facts and the like most favorable to the plaintiff, whether there's a plausible cause of action, and we don't get into facts, do we? No. But these facts that you're mentioning here about how many inmates a year and all, was that before the district court? I think this was a unique case, Your Honor, in that when it was filed there was some limited discovery taken, and then when the Supreme Court accepted the Florence case for review, the matter was stayed, and so any discovery up until that point was stayed. And then when Florence was decided, the city felt that Florence was controlling, so we moved to have it dismissed based on judgment on the pleadings, which the district court, in my opinion, properly granted based on the nature of Florence. And I believe if you look at the district court opinion, she addressed the proposed second amendment complaint and analyzed those factors and found that they were futile. So she did address the proposed amendments, but, again, that was never before her and that the only complaint before this court is the amended complaint. Again, that is a facial constitutional challenge. No, the proposed amended complaint is before us too because they've appealed the denial of the motion to amend, have they not? Yes. But, again, I do believe that Judge Pearson did provide, even assuming that she was incorrect in determining that it would be futile for the amendments to go forward, she did provide some justification in terms of they were already given an opportunity to do so, to comport their complaints, but yet they did not take advantage of that. No, that wasn't the basis of her ruling. Her ruling was on the basis of futility. That's how I read it. Yes, she did. If she had ruled that they were not diligent in amending, that they delayed, that they didn't promptly do this, that would be different. That would probably be under an abuse of discretion. But here she just looks at the legal basis for the claim as the proposed amendment would have it, and she says this is controlled by Florence, and as a matter of law they have no plausible cause of action here. Isn't that correct? Because she looks at the law, we review this de novo, do we not? Yes, you do. Okay. But, again, I think she did go out of her way to say that they had been given an opportunity to do so, but they had failed to take advantage of that opportunity. Well, if that had been the ruling, then we might review it under an abuse of discretion, but I don't see that as the ruling. And some of your honors believe that this matter can be resolved by the decision of Florence and that our DeLawson procedure is constitutional because it is reasonably related to a penological interest. Thank you very much. Thank you. Initially, in response to your question, Judge Seiler, about the procedure that was addressed in the Florence decision, I would direct the court to Record Entry 7210, page ID 582, where a gentleman by the name of Jerry Coleman, who was employed at the Burlington County Jail, stated under oath, quote, once he gives him the K-Well, which is the DeLawson solution, and instructs him how to use the K-Well, the officer leaves and the inmate takes a shower. Now, there's more elaboration in the transcript itself, but that clearly details that what happened in Florence is not what happened here. Importantly, the Florence decision carves out practices that are abusive and practices that involve the touching of detainees. So I would politely suggest to the court that this court should analyze the conduct in question here under its prior Fourth Amendment precedent, including the Stoudemire decision, which occurred after Florence and which considered Florence as part of its ruling, versus what Judge Pearson did, which is to just look at Florence and say, well, that's it, that controls, and ignoring both the carve-out in Justice Kennedy's decision and, most importantly, the comment in Judge Roberts' concurrence, where he talks about leaving exceptions to the Florence ruling for practices that embarrass the future. Is counsel correct that you're really attacking it as applied rather than a facial attack, or are you going on a facial attack solely? I'm addressing what they're doing. However we want to characterize it, if it's as applied or a facial attack, I think that type of analysis applies more in First Amendment cases. Certainly I'm looking at what they're doing, what their written policies are. What they did to your clients? Yes, and what they did to my clients. The class action, you want to bring in everybody else, but you start with what they did to your two clients, right? Yes. And you're requesting damages as well as declaratory relief? Yes, and injunctive relief, most importantly. And injunctive relief. Our hope is, when this is remanded back to Judge Pearson, that we're going to, even though the city did voluntarily stop it at the time, we're not sure what has happened since. The delousing, right? Yes, the delousing, as well as the group searches, as well as allowing trustees to strip search and delouse detainees. I wasn't aware of all that. Well, that's Mr. Beeler's situation. We're going to try to stop all of it. Okay. Have all the practices, the worst practices, been stopped? No. The delousing has been stopped, but the group strip searches continue. Continue. And I don't know. We haven't been able to do anything since Florence went up for certiorari, but if it happened to Mr. Beeler, I'm assuming it continues to happen today in the sense of having inmates involved in these procedures or having inmates observe them, be in close proximity, be able to see people. Did some of your complaint allegations moot as a result of these changes? No. Uses that have been dropped? What would you say about that? I apologize for interrupting, sir. Mootness is not one of the issues that was addressed at the district court, but this is certainly a practice that's capable of repetition, yet avoiding review. Also, Ms. Williams, I mean, she went through this delousing, right? Yes. She has damages for that part of it, so that's not moot. It happened to her. She says it was unconstitutional. I want some money for it. As does Mr. Beeler. As does Ms. Beeler. Okay. And I believe, Your Honor, you were referring to the injunctive relief component of it, and this would fall under the capable of repetition, yet avoiding review exception to the mootness doctrine. And as I said previously, if Judge Pearson's decision is allowed to stand and that becomes the law of the Sixth Circuit, this practice will be applied not just in Cleveland. It will be applied everywhere. It will be applied everywhere in the Sixth Circuit. At least that's my experience. When you indicate to a jailer that they can do something, they're going to do it.  Wrap up, though, since you're out of time. I'm out of time. I understand. Wrap up, though. Thank you, sir. If this decision is affirmed, it's going to represent a slippery slope because what Judge Pearson's analysis is is that Florence, you can do whatever you want. And if it's open season on the privacy rights of detainees, which this decision certainly is, physical cavity searches, compulsory showering by corrections officers, handling using sponges and the like, using fire hoses, it's all in the mix. And I certainly hope that that is not the state of the Fourth Amendment in this country because there are a whole range of offensive practices that can follow from Judge Pearson's analysis. Thank you for your consideration, Your Honors. Thank you. And the case is submitted. May call the next case.